# UNREPORTED CASES

*Greiff v. T.I.C. Enterprises, L.L.C.*, 2004 U.S.Dist. LEXIS 680 (D. Del. Jan. 9, 2004).

*McKesson Information Solutions, LLC v. Trizetto Group, Inc.*, 2005 U.S.Dist. LEXIS 6733 (D. Del. April 20, 2005)

*Relational Funding Corp. v. TCIM Services*, 2002 U.S.Dist. LEXIS 7298 (D.Del. April 18, 2002)

LEXSEE 2004 U.S. DIST. LEXIS 680

**James Greiff and T.I.C., Enterprises, Inc., Plaintiffs, v. T.I.C. Enterprises, L.L.C., NUI Capital Corp., NUI Sales Management, Inc., and NUI Corporation, Defendants.**

**Civ. No. 03-882-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***2004 U.S. Dist. LEXIS 680***

**January 9, 2004, Decided**

**DISPOSITION:** [*1] Motion to strike plaintiffs' affirmative defenses granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JAMES GREIFF, T.I.C. ENTERPRISES INC., plaintiffs: Elizabeth M. McGeever, Prickett, Jones & Elliott, Wilmington, DE.

For T.I.C. ENTERPRISES L.L.C., a Delaware Limited Liability Company, NUI CAPITAL CORP., NUI SALES MANAGEMENT INC., NUI CORPORATION, defendants: Jack Charles Schecter, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington, this 9th day of January, 2004, having reviewed defendants' motion to strike plaintiffs' affirmative defenses and the papers submitted by the parties in connection therewith;

IT IS ORDERED that defendants' motion to strike plaintiffs' sixteen affirmative defenses (D.I. 69) is granted in part as to plaintiffs' seventh, eighth, ninth, tenth, twelfth, and sixteenth affirmative defenses and denied in part as to plaintiffs' first, second, third, fourth, fifth, sixth, [*2] eleventh, thirteenth, fourteenth, and fifteenth affirmative defenses.

1. On May 8, 2001, defendants agreed to purchase plaintiffs' fifty-one percent remaining interest n1 in T.I.C. Enterprises, LLC for a total sum of eight million dollars to be financed in two parts: (1) five million dollars to be paid in cash upon closing the sale transaction in May 2001; and (2) three million dollars in promissory notes to be paid on a maturity date of January 2, 2001. (D.I. 6 at P7; see id., exh. A) On April 4, 2002, plaintiffs filed suit against defendants in state court for failure to pay the promissory notes as required under the purchase agreement. (D.I. 36 at 2) Defendants removed the case to the United States District Court for the Northern District of Georgia on May 15, 2002. Plaintiffs filed their first amended complaint on June 17, 2002 alleging breach of contract, fraud, and tortious interference with contractual relations. (See D.I. 6) Defendants answered this first amended complaint on July 15, 2002 denying the allegations and contending that plaintiffs failed to state a claim upon which relief may be granted for select counts. (See D.I. 11) Defendants later amended their [*3] answer on November 14, 2002 to raise affirmative defenses. (See D.I. 26) On March 5, 2003, defendants also raised counterclaims against plaintiffs alleging breach of contract, unjust enrichment, and fraud. (See D.I. 59) Plaintiffs filed a second amended complaint on May 29, 2003 to refine their fraud claims against defendants to include a charge that defendants defrauded their creditors. (D.I. 60 at P34) Plaintiffs answered defendants' counterclaims on June 2, 2003 denying the allegations and, alternatively, pleading affirmative defenses. (See D.I. 63) Defendants moved to transfer the case to the District of Delaware on July 2, 2003 (D.I. 66; 02-CV-1323), and the Northern District of Georgia granted this motion on September 10, 2003. (D.I. 86)

n1 Plaintiffs previously sold their forty-nine percent interest in T.I.C. Enterprises, LLC to defendants.

2. Plaintiff James Greiff is a resident of the State of Georgia. (D.I. 6 at P1) Plaintiff T.I.C. Enterprises, Inc. is a Georgia corporation with its principal [*4] place of

business in Georgia. (Id. at P2) Defendant T.I.C. Enterprises, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Georgia. (Id. at P3) Defendant NUI Capital Corporation is incorporated under the laws of the State of Florida with its principal place of business in Florida. (Id. at P4) Defendant NUI Sales Management is incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. (Id. at P5) Defendant NUI Corporation is incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. (Id. at P6) The court has jurisdiction over the instant suit pursuant to *28 U.S.C. § 1332*.

3. *Federal Rule of Civil Procedure 8* requires a party to set forth affirmative defenses in a responsive pleading with a "short and plain statement." *Fed. R. Civ. P. 8(a) (2003)*. *Rule 8(c)* specifically enumerates a non-exhaustive list of nineteen affirmative defenses. n2 *Federal Rule of Civil Procedure 12(f)* [*5] , in turn, states:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

*Fed. R. Civ. P. 12(f) (2003)*. Motions to strike affirmative defenses, however, are disfavored. *Procter & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988)*. When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." Id. Furthermore, courts prefer not to grant a motion to strike "unless it appears to a certainty that . . . [the movant] would succeed despite any state of the facts which could be proved in support of the defense." *Salcer v. Envicon Equities, Corp., 744 F.2d 935, 939 (2d Cir. 1984)*.

> n2 The affirmative defenses recognized in the rule include: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. See *Fed. R. Civ. P. 9(c) (2003)*.

[*6]

4. Plaintiffs' first affirmative defense asserts that the defendants' complaint fails to state a claim upon which relief can be granted. The court notes that the Federal Rules of Civil Procedure specifically permit this averment to be raised as either an affirmative defense or in a motion to dismiss. *Rule 12(b)* states, in pertinent part, that: "A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a)." *Fed. R. Civ. P. 12(b) (2003)*. *Rule 12(h)* also states, in pertinent part, that: "Every defense, in law or fact, to a claim for relief in any pleading . . . may at the option of the pleader be made by motion [including]: . . . failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(h) (2003)*. Additionally, it is well settled that the concept of failure to state a claim may be included in an answer as an affirmative defense. See *S.E.C. v. Toomey, 866 F. Supp. 719, 723 (S.D. N.Y. 1992)*. Accordingly, the court denies defendants' motion to strike plaintiffs' first affirmative defense. [*7]

5. Plaintiffs' second through sixth affirmative defenses plead, respectively, an arbitration clause, estoppel, failure of consideration, release, and waiver. These averments are proper affirmative defenses under *Rule 8(c)* and likewise comply with the "short and plain statement" requirement of *Rule 8(a)*. Additionally, the court finds that plaintiffs' pleadings adequately place defendants on sufficient notice of the nature of the defenses to be litigated against them. Defendants may ascertain the context of these averments through the discovery process, possibly via contention interrogatories. Furthermore, the court concludes that defendants will not be unnecessarily prejudiced if these affirmative defenses remain in the pleadings. The court, consequently, denies defendants' motion to strike the second through sixth affirmative defenses.

6. Plaintiffs' seventh affirmative defense alleges that any excessive punitive damages sought by defendants are barred by the Due Process Clause of the *Fourteenth Amendment* and the Due Process Clause of the Georgia Constitution. Plaintiffs' eighth and ninth affirmative defenses plead, respectively, that defendants' counterclaims must fail because defendants [*8] have not incurred any damages and that defendants' damages are contractually limited by the purchase agreement. The court finds that these averments do not constitute affirmative defenses because they will not defeat defendants' counterclaims if proven. In other words, these averments entirely overlook liability and focus solely on potential relief. In con-

trast, "affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." *FDIC v. Haines, 3 F. Supp.2d 155, 166 (D. Conn. 1997)*(quoting 2 James Wm. Moore et al., Moore's Federal Practice § 8.07[1](3d ed. 1997)). Moreover, it is clear that the concept of damages serves a purpose far different from an affirmative defense -- damages are intended to redress injuries incurred by a plaintiff after liability has been established, not as a means to shield liability in the first instance. The court, therefore, grants defendants' motion to strike plaintiffs' seventh, eighth, and ninth affirmative defenses.

7. Plaintiffs' tenth affirmative defense asserts that any damages incurred by defendants are due to their own actions. The court construes this averment as an attempt to plead contributory [*9] negligence. Defendants, however, do not plead negligence as one of their counterclaims. The court, consequently, grants defendants' motion to strike this defense.

8. Plaintiffs' eleventh affirmative defense pleads that defendants' breach of the purchase agreement and unjust enrichment counterclaims must fail because defendants breached the contract at issue. n3 The court construes this averment to argue that plaintiffs could not have breached the purchase agreement because defendants breached it first, thereby rendering the purchase agreement invalid. In other words, plaintiffs appear to argue that they could not have breached the purchase agreement because it was invalid. Plaintiffs' thirteen, fourteenth, and fifteenth affirmative defenses plead, respectively, that defendants' fraud in the inducement counterclaim n4 must fail because (1) plaintiffs did not knowingly make any false representations or material omissions; (2) plaintiffs did not knowingly make any false representations or material omissions with intent to induce defendants to act or to refrain from acting; and (3) defendants did not justifiably rely on any alleged misrepresentation or material omission made by plaintiffs. [*10] The court interprets these averments as denying particular elements of defendants' breach of contract and fraud in the inducement counterclaims. The court finds that these specific denials give defendants notice of the particular issues to be litigated, despite plaintiffs' choice of nomenclature. Such is one of the main purposes for the affirmative pleadings requirement of *Rule 8*. Additionally, "as long as the pleading clearly indicates the allegations in the complaint that are intended to be placed in issue, the improper designation should not prejudice the pleader." 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1269 (1990). Accordingly, the court denies defendants' motion to strike plaintiffs' eleventh, thirteen, fourteenth, and fifteenth affirmative defenses.

n3 An action for breach of contract requires proof of: (1) a valid contract; (2) breach of a duty imposed by the contract; and (3) damages resulting from the breach.

n4 An action for a fraud in the inducement under Delaware law, requires proof of: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction [was] taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. See *Lord v. Souder, 748 A.2d 393, 402 (Del. 2000)*.

[*11]

9. Plaintiffs' twelfth affirmative defense alleges that defendants' fraud in the inducement counterclaim must fail because defendants breached the contract at issue. Plaintiffs have agreed to withdraw this affirmative defense. (See D.I. 73 at 15) "If a defense has been withdrawn, a motion to strike it from the pleadings is proper." 5A Wright & Miller, Federal Practice and Procedure: Civil 2d 1381 (1990). Therefore, the court grants defendants' motion to strike plaintiffs' twelfth affirmative defense.

10. Plaintiffs' sixteenth affirmative defense alleges that "plaintiffs respond to the individually-numbered paragraphs in defendants' counterclaim as follows." (D.I. 63 at 4) The court construes this averment as attempt to offer plaintiffs' entire answer as an affirmative defense. The court finds this attempt illogical and grants defendants' motion to strike plaintiffs' sixteenth affirmative defense.

Sue L. Robinson

United States District Judge

LEXSEE 2005 U.S. DIST. LEXIS 6733

**MCKESSON INFORMATION SOLUTIONS, LLC, Plaintiff, v. THE TRIZETTO GROUP, INC., Defendant.**

**Civ. No. 04-1258-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***2005 U.S. Dist. LEXIS 6733***

**April 20, 2005, Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For McKesson Information Solutions LLC, Plaintiff: Thomas J. Allingham, II, Michael A. Barlow, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For Trizetto Group Inc., Defendant: Jack B. Blumenfeld, Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Trizetto Group Inc., Counter Claimant: Jack B. Blumenfeld, Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For McKesson Information Solutions LLC, Counter Defendant: Thomas J. Allingham, II, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United Stated District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

## I. INTRODUCTION

On September 13, 2004, plaintiff filed this action alleging infringement of its *United States Patent No. 5,253,164* ("the '164 patent") by defendant. Defendant answered the complaint, denied any infringement and asserted that the '164 patent was invalid and unenforceable. (D.I. 10)

Pending before the court are plaintiff's motions to strike defendant's affirmative defenses, dismiss defendant's counterclaims or, in the alternative, for a more definitive statement of such defenses and counterclaims. [*2] (D.I. 13) This court has jurisdiction over this suit pursuant to *28 U.S.C. § 1338.*

## II. BACKGROUND

Plaintiff is a Delaware limited liability corporation with its principal place of business in Alpharetta, Georgia. (D.I. 10) Defendant is a Delaware corporation with its principal place of business in Newport Beach, California. (D.I. 10) The parties create and distribute software for reviewing the accuracy of healthcare claims and/or charges. (Id. at PP 25-26)

## III. STANDARD OF REVIEW

*Federal Rule of Civil Procedure 8* requires a party to set forth affirmative defenses in a responsive pleading with a "short and plain statement." *Federal Rule of Civil Procedure 12(f)*, in turn, states:

> Upon motion by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous [*3] matter.

Motions to strike affirmative defenses, however, are disfavored. See *Procter & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988)*. When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party . . . and deny the motion if the defense is sufficient under the law." Id. Further-

more, courts prefer not to grant a motion to strike "unless it appears to a certainty that . . . [the movant] would succeed despite any state of the facts, which could be proved in support of the defense." *Salcer v. Envicon Equities, Corp., 744 F.2d 935, 939 (2d Cir. 1984).*

**IV. DISCUSSION** n1

n1 Because plaintiff's motion to dismiss, or in the alternative for a more definite statement, depends solely on its motion to strike, the motion is dismissed without prejudice to renew.

Defendant's answer to the complaint asserts eight affirmative defenses and counter-claims for declaratory judgment of noninfringement, unenforceability [*4] and invalidity. (D.I. 10) Plaintiff has moved to strike defendant's second, sixth and seventh affirmative defenses. (Id. at PP 11, 15, 16-18)

**A. Second And Sixth Affirmative Defenses - Invalidity & Misuse**

Defendant's second affirmative defense argues that the '164 patent is invalid "for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to *35 U.S.C. § § 102*, *103* and *112*." (Id. at P 11) Plaintiff argues that this defense is too broad because it includes any and all of title 35, and it is repetitive of defendant's third, fourth and fifth affirmative defenses, which asserts specific violations of *§ § 102*, *103* and *112*. (Id.)

Defendant's sixth affirmative defense asserts that "the '164 patent is unenforceable because [plaintiff] comes into Court with unclean hands. Plaintiff has committed patent misuse by attempting to enforce a patent it should reasonably know is invalid and not infringed." (D.I. 10 at P 15) Plaintiff asserts that this defense does not meet pleading requirements because it does not allege bad faith or anti-competitive effect. n2

N2 The basic allegation of patent misuse is that the patentee has "extended the economic benefit beyond the scope of the patent grant." *C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1372 (Fed. Cir. 1998).* Patent misuse "requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868-71 (Fed. Cir. 1997).* There is a two part test for patent misuse that requires the party alleging misuse to show a patentee's bad faith in alleging infringement and an anti-competitive effect or purpose behind the allegation. See e.g., *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, 45 F.3d 1550, 1558 (Fed. Cir. 1995)*; *Advanced Cardiovascular Sys. v. Scimed Sys., 1996 U.S. Dist. LEXIS 11702, C-96-0950, 1996 WL 467277 at *4 (N.D. Cal. 1996).*

[*5]

In complex litigation, such as cases involving patent infringement, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to strike defendant's affirmative defenses until adequate discovery has been completed.

**B. Seventh Affirmative Defense - Inequitable Conduct**

Defendant's seventh affirmative defense states:

> The patent-in-suit is invalid and unenforceable because it was obtained through the intentional failure of the inventors, and/or their agents, to disclose to the Patent Office, during prosecution of the patent-in-suit, information material to the patentability of the patent-in-suit, in violation of *37 C.F.R. § 1.56.*
>
> To the extent now known, and subject to further amplification as to the full extent of the withholding and misrepresentation of information, the inventors and/or their agents made a number of misrepresentations or omissions of material fact to the Patent Office, including but not limited to, false statements and omissions regarding prior art. In particular, and without limitation, the following intentional and material false statements or omissions [*6] were made by the inventors and/or their agents, including:
>
> a) the failure by applicants to disclose to the Examiner one of the inventors' own material prior art publications, including "An Access-oriented Negotiated Fee Schedule - The Caterpillar Experience," . . . and a presentation at the 107th Annual Meeting of The American Surgical Association . . .;
>
> b) the failure to disclose to the Examiner the fact that the claimed software to review claims was obvious and disclosed in commonly available books on expert

systems as admitted by Marcia Radosevich, President of HPR, the assignee of the patent-in-suit, in a case study at the Harvard Business School in 1989;

c) the failure to disclose to the Patent Office that four programming and code review consultants participated in the development of the claimed software as described by Marcia Radosevich to the Harvard Business School; and

d) the failure to disclose to the Patent office that the invention was conceived by some individuals who were employed by Boston University's Health Policy Institute, and that the work was funded by the U.S. Government sponsored research.

The above false statements and omitted references and funding information [*7] would have been considered by a reasonable examiner to be material to a determination of allowability of the patent claims, and on information and belief, said statements and omissions were made with intent to deceive the Patent Office. Had the inventors and/or their agents made accurate representations to the Patent Office, the '164 patent would not have issued. Hence, the patent-in-suit is unenforceable for inequitable conduct.

(D.I. 10 at PP 16-18)

Fraud is a clear exception to the otherwise broad notice-pleading standards under *Fed. R. Civ. P. 9*. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. See e.g., *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1343-44 (Fed. Cir. 2003)*.

This court has previously found that pleadings that "disclose the name of the relevant prior art and disclose the acts of the alleged fraud fulfill the [*8] requirements of *Rule 9(b)*." See, e.g., *EMC Corp. v. Storage Tech. Corp., 921 F. Supp. 1261, 1263 (D. Del. 1996)*. In this case, defendant has satisfied the pleading requirements of *Rule 9(b)*, as it states, with reasonable particularity, the prior art references and instances of fraud to which it is referring. Plaintiff is on notice of the misconduct alleged.

## IV. CONCLUSION

Therefore, at Wilmington this 20th day of April, 2005;

IT IS ORDERED that:

1. Plaintiff's motion to strike certain of defendant's affirmative defenses (D.I. 13) is denied without prejudice.

2. Plaintiff's motion to dismiss, or for a more definitive statement (D.I. 13), is denied without prejudice.

Sue L. Robinson

United Stated District Judge

LEXSEE 2002 U.S. DIST. LEXIS 7298

**RELATIONAL FUNDING CORPORATION, Plaintiff, v. TCIM SERVICES, INC., Defendant.**

**Civil Action No. 01-821-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***2002 U.S. Dist. LEXIS 7298***

**April 18, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For RELATIONAL FUNDING CORP, plaintiff: Elizabeth M. McGeever, Prickett, Jones & Elliott, Wilmington, DE. Robert Karl Hill, Seitz, Van Ogtrop & Green, P.A., Wilmington, DE.

For TCIM SERVICES INC., defendant: Robert Karl Hill, Seitz, Van Ogtrop & Green, P.A., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

## I. INTRODUCTION

On December 11, 2001, plaintiff Relational Funding Corporation ("RFC") filed this action against defendant TCIM Services, Inc. ("TCIM") alleging that TCIM breached a contract under a lease by failing to provide notice of its intent to terminate the lease and by failing to return the equipment of the lease. Consequently, RFC is seeking return of the equipment, plus damages. Currently before the court is TCIM's motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). (D.I. 8) For the reasons stated below, TCIM's motion to dismiss is denied.

## II. BACKGROUND

On December 16, 1997, defendant TCIM entered into a Master lease agreement ("Lease"), as lessee, with Varilease Corporation (a non-party), [*2] as lessor, for certain computer equipment. (D.I. 1 P5) On December 18, 1997, Varilease assigned all of its rights, but none of its obligations, under the Lease to Nationsbanc Leasing Corporation (a non-party) pursuant to a non-recourse note and security agreement. (Id. P8) Varilease notified TCIM of its assignment to Nationsbanc and directed TCIM to make all remaining payments on the Lease to Nationsbanc. (Id.) By the agreement between Nationsbanc and Varilease, Varilease retained all of its interest in the lease equipment. (Id.) On January 1, 1998, Varilease sold all of the equipment in dispute, assigning all of its right, title, and interest in the Lease to plaintiff RFC. (Id. P9)

Under the terms of the Lease:

> A Lease may be terminated as of the last day of the last month of the Base Term [December 2000] by written notice given by either Lessor or Lessee not less than six (6) months prior to the date of the termination of the Base Term. If the Lease is not so terminated at the end of the Base Term, the Base Term shall be automatically extended for successive six (6) month periods until such six (6) month notice is given. The Base Monthly Rental, as hereinafter [*3] defined, shall continue to be due and payable by Lessee until the Equipment is redelivered to Lessor upon the termination of the Base Term or any extension term, and throughout any such extension term(s). No notice of termination may be revoked without the written consent of the other party.

(Id. P11; Ex. A P2(b)) Also under paragraph 18(c) of the Lease, "all notices, consents or requests desired or required to be given under the Lease shall be in writing and shall be delivered . . . to the address of the other party . . . or to such other address as such party shall have designated by proper notice." (Id. Ex. A P18(c)) The return of the lease equipment is governed by paragraph 6(d) of the Lease, which states:

> Lessee shall, at the termination of the Lease, at its expense, de-install, pack and return the Equipment to Lessor at such location within the continental United States as shall be designated by Lessor in the same operating order, repair, condition and appearance as of the Installation Date, reasonable wear and tear excepted, with all current engineering changes prescribed by the manufacturer of the Equipment or a maintenance contractor approved by Lessor [*4] (the "Maintenance Organization") incorporated in the Equipment. Until the return of the Equipment to Lessor, Lessee shall be obligated to pay the Base Monthly Rental and all other sums due under the Lease. Upon redelivery to Lessor, Lessee shall arrange and pay for such repairs (if any) as are necessary for the manufacturer of the Equipment to accept the Equipment under a maintenance contract as its then standard rates.

(D.I. 1 P11; Ex. A P6(d))

RFC alleges that TCIM defaulted under the terms of the Lease by failing to give the required notice of its intent to terminate the Lease in accordance with Paragraph 2(b) of the Lease. (D.I. 1 P14) RFC also alleges that TCIM has defaulted under the terms of the Lease because the majority of the equipment under the Lease has not been returned and a substantial portion of the equipment that was returned did not match the equipment that was given out under the Lease. n1 (Id.)

> n1 Specifically, RFC contends that of the equipment under the Lease, only 244 of 454 desktop computers were returned and only 32 had serial numbers that matched those leased. (D.I. 14 at 4) Out of 276 monitors, 228 were returned but only 29 matched the equipment leased. (Id.) Finally, only five out of nine laptops were returned. (Id.)

[*5]

Under the terms of the Lease, TCIM claims that it has no obligations to any assignee except "upon receipt of notice of any such transfer or assignment and instructions from Lessor." (D.I. 1, Ex. A P10(a)) Since RFC has not alleged that any party delivered the required notice of assignment to TCIM, RFC has not fulfilled its contractual obligations. (D.I. 9 at 4) TCIM also claims that because RFC failed to plead the delivery of notice to TCIM of the assignment, RFC does not have standing to assert a claim for breach of contract against TCIM. (Id.) Finally, TCIM claims that the Lease equipment in question was delivered to RFC pursuant to its own instructions. n2 (Id.)

> n2 "TCIM is investigating RFC's assertion that not all of the equipment subject to the lease has been returned." (D.I. 15 at 2 n.1)

**III. STANDARD OF REVIEW**

In analyzing a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, the court must accept as true all material allegations of the complaint and it must construe the complaint [*6] in favor of the plaintiff. See *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)*. "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The moving party has the burden of persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)*.

**IV. DISCUSSION**

The Lease is governed under Michigan Law. (D.I. 1 Ex. A, P18(a)) The elements of a breach of contract claim, under Michigan law, are: "(1) a contract existed; (2) plaintiff fulfilled its contractual obligations; (3) defendant breached its contractual obligations; and (4) plaintiff suffered injury as a result of defendant's breach of contract." [*7] Great Lakes *Exteriors, Inc. v. Dryvit Systems, Inc., 2000 U.S. Dist. LEXIS 13066*, No. 99- *CV-70449-DT, 2000 WL 1279167*, *3 (E.D. Mich. August 16, 2000) (internal citations omitted). TCIM argues that in order to state a claim for breach of contract, RFC must

allege that a contract existed and that RFC performed its obligations under the contract. By failing to give notice of assignment, TCIM argues that RFC failed to allege either. RFC contends that it clearly has standing by the assignment from Varilease and, under Rule 12(b)(6), the complaint is sufficient by providing notice of its claim and the right to avail itself of the default provisions of the Lease.

When deciding a motion to dismiss for failure to state a claim, "one must read *Fed. R. Civ. P. 12(b)(6)* in conjunction with *Fed. R. Civ. P. 8(a)*, which establishes the requirements for adequately pleading a claim in federal court." *Brunetti v. Rubin, 999 F. Supp. 1408, 1409 (D. Col. 1998).* See also Biles v. City of Grand Rapids, No. 1:90- *CV-269, 1990 U.S. Dist. LEXIS 13396,* at *2-3 (W.D. Mich. October 9, 1990). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Brunetti, 999 F. Supp. at 1409.* [*8] The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. See *Conley, 355 U.S. at 47.* A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154-159 (1990). Despite that fact, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).*

The court does not consider whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).* However, in order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. See *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. See *Gould Electronics v. United States, 220 F.3d 169, 178 (3d Cir. 2000).* [*9]

The record demonstrates that the complaint has been pled with sufficient particularity to give defendant TCIM fair notice of what plaintiff RFC claims and the grounds upon which such claim rests. The fact that RFC may not prevail on the merits of its breach of contract claim is not a pleading deficiency subject to dismissal under *Fed. R. Civ. P. 12(b)(6)*. Nor are the facts underlying TCIM's defenses undisputed and, therefore, dismissal on the merits likewise is not justified at this stage of the proceeding.

**V. CONCLUSION**

Therefore, at Wilmington this 18th day of April, 2002;

IT IS ORDERED that defendant's motion to dismiss (D.I. 8) is denied.

Sue L. Robinson

United States District Judge