# YOUNG CONAWAY STARGATT & TAYLOR, LLP

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX: 302-576-3301
jingersoll@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

October 17, 2005

**BY E-FILE**

The Honorable Gregory M. Sleet
United States District Court
844 King Street
Wilmington, DE 19801

    Re: *Enzon Pharmaceuticals, Inc. v. Phoenix Pharmacologics, Inc.*
         Civil Action No. 04-1285-GMS

Dear Judge Sleet:

    Plaintiff Enzon Pharmaceuticals respectfully submits this reply letter in further support of its request for leave to move for summary judgment (i) on its claim for ownership of U.S. Patent 6,183,738 and (ii) dismissing defendant Phoenix's affirmative defenses. As it stated previously, Enzon believes the more efficient and surer course is for neither party to receive leave to move for summary judgment. The numerous issues of technical fact, and the inferences to be drawn from even those few fact issues that are largely undisputed, asserted in Phoenix's October 11 letter in opposition only confirms the merit of Enzon's view that summary judgment practice by either side would be inefficient, burdensome on the Court and the parties, and highly unlikely to obviate the need for a trial. But if the Court is inclined to permit summary judgment motions, Enzon should be permitted to file its motion for the reasons set forth in its October 3 letter and further explained below.

    A.    **No Genuine Factual Dispute Stands in the Way of Judgment Assigning the '738 Patent To Enzon Because — Regardless of Whether Dr. Clark is a Sole Inventor, a Co-inventor, or not an Inventor at all — the Subject Matter Claimed in the Patent was Invented at Enzon**

    Phoenix's scramble to isolate arbitrary slices of the '738 patent that it says were not invented at Enzon badly misses the point as a matter of both law and fact. An example of this is its focus on a few linking groups included in the Markush group of claim 1, the carbohydrate or epoxy groups, that it says were not made at Enzon.

    Phoenix is wrong on the facts and mis-states the law. The basic test of inventorship (the inventor is the person who conceives of all elements of a claim) does not, as Phoenix would have the Court believe, mean that a person is permitted to write and receive a patent claim that indisputably reads on inventions made by others while claiming inventorship for himself merely by listing specific options within the genus of the true inventor.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
October 17, 2005
Page 2

For example, consider a mechanical invention (a lamp) that includes elements A (a base) and B (a pole) and C (a socket). May a former employee who knew that his employer had made this invention with lamp poles of aluminum and steel proceed to obtain for himself a claim to a lamp "wherein the pole is selected from the group consisting of aluminum, steel, and brass" on the basis that brass had not been used at his former employer even though the inclusion of aluminum and steel in the claim makes it read on work that belonged to his former employer? Of course not. That would, however, be the result of Phoenix's improper spin of the "all elements" rule of inventorship. Patent law does not allow a person to add optional elements to an invention of others and then claim the entirety as their own which, even assuming Phoenix's version of the facts, is what was done here. *See Sewall v. Walters*, 21 F.3d 411, 416 (Fed. Cir. 1994).

Here, even under Phoenix's statement of facts (which Enzon disputes), all Dr. Clark did in claim 1 was add two possible linking groups to a list of others that it admits were done by Enzon. That act does not enable him to claim for himself (and for Phoenix) Enzon's work that he was contractually obligated to assign by virtue of his employment and termination agreements. And again, even under Phoenix's statement of the facts, there is not a single claim in the '738 patent that carves out from inventions made at Enzon the work that Clark supposedly did on his own after he left the company.

Phoenix does not even attempt to argue that Enzon employees did not conceive of PEG-ADI utilizing the other linking groups recited in the '738 patent: succinimide, amide, imide, carbamate, ester, carboxyl, hydroxyl, tyrosine, cysteine, hisitidine. But even if Phoenix's assertion was correct, that would not entitle Clark to claim the genus for himself at Enzon's expense because the admitted conception at Enzon of numerous members of the Markush group of claim 1 connotes conception of the entire genus that that listing represents. *See Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124-125 (Fed. Cir. 2004).

The same goes for Phoenix's argument about the range of molecular weights of PEG. Claim 1 recites the range of 1,000 to 40,000 Daltons, and Phoenix does not dispute that Enzon synthesized compounds using PEG of 5,000 and 12,000 Daltons. Phoenix fails to mention that internal Enzon documents clearly show discussion of 20,000 Dalton PEG as well, and that an Enzon patent which predates the '738 patent discloses use of PEG ranging from 600 to 60,000 Daltons for pegylation of ADI. But even without them, Clark does not become an inventor of Enzon subject matter simply by writing a *broader* claim that includes Enzon work. Phoenix's attempt to distinguish among three different varieties of *Mycoplasma* ADI fails for essentially the same reasons.

B.  **Phoenix Has Not Identified Any Genuine Issue of Material Fact That Would Preclude Summary Judgment Dismissing its Affirmative Defenses**

As asserted in Enzon's brief in support of its Motion to Strike Defendant's Affirmative Defenses and reply brief in further support thereof (D.I. 44 and 66), Phoenix's affirmative

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
October 17, 2005
Page 3

defenses are legally insufficient. Phoenix's recent (and very belated) interrogatory response does not change this state of affairs or raise genuine factual issues (for which Phoenix would bear the burden of proof) that might avoid summary judgment.

As set forth in Enzon's earlier briefing, economic or evidentiary prejudice is an element of the defense of laches. Phoenix is not entitled to a presumption of laches because Enzon filed this case less than six years after the '738 patent issued, and thus Phoenix must carry the burden of establishing the facts. No cognizable prejudice is identified in Phoenix's papers. For the same reasons, its defenses of estoppel and waiver would also fail to withstand summary judgment.

Finally, as set forth in Enzon's letter in opposition to Phoenix's request to move for summary judgment that Enzon's claim is time barred, there would be numerous factual issues related to when the claim accrued, what damages have been suffered by Enzon within the statute of limitations, and which state's law should apply.

## Conclusion

For the reasons set forth above and in its opening letter, Enzon respectfully requests that, should the Court allow motions for summary judgment, Enzon be granted leave to move for summary judgment (i) on its claim that the '738 patent be assigned to Enzon and (ii) dismissing Phoenix's affirmative defenses. However, Enzon respectfully submits that the complexity of the factual issues in this case make the grant of summary judgment unlikely and that a more efficient and surer disposition would be on a full trial record.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)

JWI:cg
cc:   Clerk of the Court (by e-filing and hand delivery)
      Richard D. Kirk, Esquire (by e-filing)
      Joseph Lucci, Esquire (by e-mail)
      Michael Siem, Esquire (by e-mail)

DB01:1878503.1                                                                                           063541.1001